IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAR 1 8 2025
CLERK, U.S. DISTRICT COURT
By_____
     Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 2:25-CR-23 |
| VANESSA ROBINSON | |

### FACTUAL RESUME

In support of the plea of guilty by Vanessa Robinson to the offense in Count One of the Information, Robinson, the defendant, Eric Coats, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

### ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the Information, charging a violation of 18 U.S.C. § 371, that is, Conspiracy to Embezzle from a Federally Funded Program, the government must prove each of the following elements beyond a reasonable doubt:

Conspiracy to Embezzle from a Federally Funded Program[1]

*First.*  That the defendant and at least one other person agreed to embezzle from a federally funded program, as charged in the Information;

*Second.*  That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

*Third.*  That at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the Information, in order to accomplish some object or purpose of the conspiracy.

---

[1] Fifth Circuit Pattern Jury Instruction 2.15A (5th Cir. 2024).

Vanessa Robinson
Factual Resume—Page 1

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of "partnership in crime" in which each member of the conspiracy becomes the agent of every other member.

The overt act need not be of a criminal nature so long as it is done in furtherance of the conspiracy.

One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict her for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.

The government does not need to prove that the alleged conspirators entered into any formal agreement, or that they directly stated between themselves all the details of the scheme. Likewise, the government does not need to prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out. Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

<u>Embezzlement from a Federally Funded Program</u>[2]

*First.*     That the defendant was an agent of the City of Amarillo;

*Second.*   That the City of Amarillo was an organization or government that

---

[2] Fifth Circuit Pattern Jury Instruction 2.33A (5th Cir. 2024).

received in any one-year period benefits in excess of $10,000 under a Federal program involving subsidies;

*Third.*   That the defendant stole, embezzled, or obtained by fraud property that was owned by, or under the care, custody, or control of, the City of Amarillo; and

*Fourth.*   That the property had a value of $5,000 or more.

The term "agent" means a person authorized to act on behalf of another person or a government and, in the case of an organization, or government, includes a servant or employee, and a partner, director, officer, manager, and representative.

The term "government agency" means a subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program.

The term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

The term "in any one-year period" means a continuous period that commences no earlier than twelve months before the commission of the offense or that ends no later than twelve months after the commission of the offense. Such period may include time both before and after the commission of the offense.

To "embezzle" means to wrongfully, intentionally take money or property of another after the money or property has lawfully come within the possession or control of the person taking it. No particular type of moving or carrying away is required.

To "steal" or "convert" means to wrongfully take money or property belonging to another with intent to deprive the owner of its use and benefit either temporarily or permanently. Any appreciable change of the location of the property with the intent to deprive constitutes a stealing whether or not there is an actual removal of it from the owner's premises.

To "obtain by fraud" means to act knowingly and with intent to deceive or cheat, usually for the purpose of causing financial loss to someone else or bringing about a financial gain to oneself or another.

To "intentionally misapply" money or property means to intentionally convert such money or property for one's own use and benefit, or for the use and benefit of another, knowing that one had no right to do so.

The word "value" means the face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

It is not necessary to prove that the defendant's conduct directly affected the funds received by the agency under the Federal program. However, there must be some connection between the criminal conduct and the organization or agency of State government receiving federal assistance.

In determining whether the defendant is guilty of this offense, do not consider bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.

## STIPULATED FACTS

1. Vanessa Robinson admits and agrees that, at all times relevant to this factual resume, she was an agent of the City of Amarillo, and that the City of Amarillo received benefits in excess of $10,000 in a one-year period in subsidies from the United States Department of Housing and Urban Development (HUD). Robinson further admits and agrees that beginning from as early as July 2019, and continuing until in or around September 2024, in the Amarillo Division of the Northern District of Texas, and elsewhere, she did knowingly and willfully combine, conspire, confederate, or agree with persons known or unknown to the United States to knowingly steal, embezzle, or obtain by fraud, property having an aggregate value of $5,000 or more, which was owned by, or

under the care, custody, or control of, the City of Amarillo, in violation of Title 18, United States Code, Section 666(a)(1)(A).

2. Vanessa Robinson was employed by the City of Amarillo from 2013 until January 2024. Robinson worked in the Community Development Department as a Grant Manager. As a Grant Manager, Robinson was an agent of the City of Amarillo. Robinson was responsible for distributing HUD funds through the Community Development Block Grant programs. This program provided funding for homeless or near-homeless citizens in Amarillo, Texas, to assist with housing costs.

3. The City of Amarillo was an organization or government that, in each of the one-year periods from January 1, 2019, through December 31, 2024, received federal grants and benefits well in excess of $10,000 through HUD subsidies.

4. Robinson, on behalf of the City of Amarillo, would communicate with local property owners in Amarillo who were willing to lease their properties to people through the City's programs. The City of Amarillo would pay the landlord a market-rate rental fee in exchange for housing persons that needed assistance. Robinson also assisted in completing the lease agreements between the landlords and the lessee. After a property was selected, the Community Development Department's in-house Inspection team would perform a physical inspection to ensure that the living standards required by HUD were met. Robinson was responsible for coordinating these inspections and ensuring the properties passed inspection. Robinson would assemble the collected information into a Payment Voucher package. The Payment Vouchers were then sent to the City of

Amarillo's Finance Department, who would issue payments to landlords by direct deposit or checks.

5. Beginning in July 2019 until September 2024, Robinson created structures within the Community Development Department that allowed her to live rent-free, at the expense of these programs intended to help the most destitute. Robinson had a co-conspirator communicate with her landlords, acting as Robinson's case worker, where Robinson posed as a qualifying recipient. For example, in May 2021, Robinson resided at 2036 S. Travis Street. Robinson, through her employment, prepared twenty-five payment voucher packages using fictitious recipient names to receive rent assistance from the City of Amarillo. Robinson's co-conspirator, another former employee, who participated in a similar scheme, communicated with her landlord to act like Robinson's case worker so Robinson could pose as a qualifying recipient for housing assistance. Through this scheme, Robinson fraudulently received twenty-five months of free rent while she resided at 2036 S. Travis Street, totaling $34,673.93.

6. Additionally, Robinson created fraudulent lease agreements to obtain funds from City programs. For example, Robinson used her spouse's identity to create a fictitious landlord to receive funds through the Emergency Services Grant (ESG) Program. The Finance Department would then prepare checks to be paid to Robinson's spouse, a fictious landlord. In April 2021, the HUD issued a notice to all ESG program recipients that, due to COVID, recipients of ESG funds were allowed to accept property inspections conducted by other providers, instead of having to conduct their own inspections. This allowed Robinson to process payments for her spouse, a fictious

landlord for the properties. Robinson also assisted her family members with HUD funds by filling out fraudulent applications for them so they could receive housing assistance.

7. From July 2019 through September 2024, Robinson created fraudulent lease agreements, fraudulent applications, and fraudulent Payment Vouchers, resulting in checks written to a fictitious landlord, including her spouse, and her personal landlords, for a total loss amount of approximately $121,325.21. Robinson admits that she embezzled these funds, which were owned by, or under the care, custody, or control of, the City of Amarillo.

8. Robinson admits that she was an agent of City of Amarillo. Robinson admits that the City of Amarillo was an organization or agency of State government that received in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance. Robinson admits that she embezzled, stole, obtained by fraud, knowingly converted to her own use, or intentionally misapplied property that was owned by or under the care, custody, or control of the City of Amarillo. Robinson admits that the aggregate value of the property was $5,000 or more.

9. Robinson admits that she had her co-conspirator, another former employee who participated in a similar scheme, communicate with her landlords to act like Robinson's case worker where she posed as a qualifying recipient. Robinson and her co-conspirator agreed to embezzle from a federally funded program, as described in the preceding paragraph. Robinson admits that she knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful

purpose. Robinson admits that during the existence of the conspiracy she knowingly committed at least one of the overt acts described in the Information, in order to accomplish some object or purpose of the conspiracy.

10. The defendant agrees that the defendant committed all the essential elements of the offense(s). This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the Information.

AGREED TO AND STIPULATED on this  18th  day of  March , 2025.

CHAD E. MEACHAM
ACTING UNITED STATES ATTORNEY

_____  
Vanessa Robinson  
Defendant

_____  
JOSHUA FRAUSTO  
Assistant United States Attorney  
Attorney-in-Charge  
Texas State Bar Number 24074228  
500 South Taylor Street, Suite 300  
Amarillo, Texas 79101-2446  
Telephone:  806-324-2356  
Facsimile:  806-324-2399  
E-mail:  joshua.frausto@usdoj.gov

_____  
Eric Coats  
Attorney for Defendant